1  STEPHEN R. HARRIS, ESQ. NVB 1463
   Email: steve@harrislawreno.com
2  NORMA GUARIGLIA, ESQ. NVB 16244
   Email: norma@harrislawreno.com
3  HARRIS LAW PRACTICE LLC
   850 E. Patriot Blvd., Suite F
4  Reno, NV 89511
   Telephone: (775) 786-7600
5  Facsimile: (775) 786-7764
   Attorneys for Debtor/ Defendant
6
7                    UNITED STATES BANKRUPTCY COURT
8                      FOR THE DISTRICT OF NEVADA
9                                * * * * *

IN RE:                            Case No.: 21-50466-nmc
10                                (Chapter 13)

11 JULIANA MAYER LOZA,              Adv. No. 23-05007-nmc

12              Debtor.            **MOTION FOR ORDER APPROVING**
                                   **DEBTOR'S COMPROMISE AND**
13 _____/       **SETTLEMENT OF CLAIMS WITH**
                                   **LEVERTY & ASSOCIATES LAW**
14 KAMMA, LLC, a Nevada limited liability  **CHTD., AUTOMATIC FUNDS**
   company,                        **TRANSFER SERVICES, KAMMA, LLC**
15              Plaintiff,         **AND MICHAEL MILLWARD, ESQ. AS**
                                   **GENERAL ADMINISTRATOR OF THE**
16 vs.                             **ESTATE OF RAY WARREN EXLEY**
                                   **UNDER FED. R. BANKR. P. 9019(a)**
17 LEVERTY & ASSOCIATES LAW CHTD.,
   a Nevada professional corporation,
18 AUTOMATIC FUNDS TRANSFER        Hrg. Date:   November 28, 2023
   SERVICES dba ALLIED TRUSTEE     Hrg. Time:   2:00 p.m.
19 SERVICES, a Washington corporation,  Est. Time:   30 minutes
   JULIANA MAYER LOZA, individually,  Set By:   Judge Cox per verbal OST
20 and in her capacities as Special
   Administrator of The Estate of Ray Warren
21 Exley, Corporate Officer of Athena Medical
   Group Inc., a Nevada corporation, and
22 Trustee of the Athena Medical Group Inc.
   Defined Contribution Pension Plan and Trust
23 Number Three, and the ADMINISTRATOR
   OF THE PROBATE ESTATE OF RAY
24 WARREN EXLEY,
25              Defendants.
26
27 _____/
28

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NV 89511
775 786 7600

1

JULIANA MAYER LOZA ("Debtor" or "Loza"), by and through her attorneys, STEPHEN R. HARRIS, ESQ. and NORMA GUARIGLIA, ESQ., of HARRIS LAW PRACTICE LLC, hereby files her MOTION FOR ORDER APPROVING DEBTOR'S COMPROMISE WITH LEVERTY & ASSOCIATES LAW CHTD., AUTOMATIC FUNDS TRANSFER SERVICES, KAMMA, LLC AND MICHAEL MILLWARD, ESQ. AS GENERAL ADMINISTRATOR OF THE ESTATE OF RAY WARREN EXLEY OF UNDER FED. R. BANKR. P. 9019(a) ("Motion"). This Motion is based on the points and authorities below, all papers and pleadings on file in the Chapter 13 case (Case No. 21-5466-nmc) and the related Adversary Case 23-05007-nmc, and any evidence and oral argument presented at the hearing to consider the Motion.

## **BACKGROUND**

1.      Debtor filed a voluntary petition for Chapter 13 bankruptcy relief on June 22, 2021, at approximately 6:18 p.m. PDT (*See* DE 1).

2.      At the time the Debtor's case was filed, she owned a legal, equitable, and beneficial interest in the real property located at 429 Panorama Drive, Stateline, Douglas County, NV 89449 ("Stateline Property").

3.      As this Court is aware, several contested matters are pending in this case stemming from a postpetition foreclosure sale by Leverty and Allied Trustee Services ("Allied") of the real property located at 429 Panorama Drive, Stateline, Douglas County, NV 89449 ("Real Property"). KAMMA, LLC ("Kamma") was the purported buyer of the Real Property at the foreclosure sale.

4.      After this Court entered its order [ECF No. 212] declaring the foreclosure sale void ab initio and in violation of Debtor's automatic stay, Leverty filed a *Motion to Alter or Amend Judgment or for a New Trial Under Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59* [ECF No. 219] ("Motion to Amend").

5.      On May 1, 2023, Kamma initiated as Adv. No. 23-05007-nmc an adversary proceeding ("Adversary Case") against Allied, Leverty, the Administrator of the Probate Estate of Ray Warren Exley ("Exley Estate"), and the Debtor, individually, and in her capacities as Special Administrator of the Estate of Ray Warren Exley, Corporate Officer of Athena Medical

1  Group, Inc., a Nevada corporation ("Athena Nevada"), and Trustee of the Athena Medical Group

2  Inc. Defined Contribution Pension Plan and Trust Number Three ("Athena DBP 3").

3       6.    On May 23, 2023, at 2:00 pm, the Court held a hearing on Leverty's Motion to

4  Amend and took the matter under advisement.

5       7.    On June 23, 2023, Leverty next filed a *Motion to Dismiss Bankruptcy Case* [ECF

6  No. 242] ("Motion to Dismiss") and *Objection to Debtor's Claim of Exemptions* [ECF No. 246]

7  ("Objection to Exemptions"). Leverty also filed a joinder to the *Trustee's Objection to Debtor's*

8  *Claim of Exemptions* [ECF No. 241], and Allied filed joinders to Leverty's Motion to Dismiss and

9  Objection to Exemptions.

10       8.    Subsequently, the Debtor, Leverty, Allied, Kamma, and the Exley Estate

11  (collectively "Parties") all agreed to attend a settlement conference with Judge Zive on July 7, 2023,

12  at 9:00 a.m. In light of the Parties' anticipated settlement conference, this Court continued the

13  hearings on all the pending contested matters.

14       9.    The Parties attended the settlement conference on July 7, 2023 ("July Settlement

15  Conference") and arrived at a settlement which Judge Zive placed on the record. However, after

16  several weeks, the Parties were not able to agree on a final form settlement agreement to

17  memorialize the July 7, 2023, agreement.

18       10.    Leverty then filed its *Motion to Enforce Settlement Agreement* [ECF No. 261]

19  ("Motion to Enforce"). Allied (through its counsel, Leverty) also filed its *Joinder to Motion to*

20  *Enforce Settlement Agreement* [ECF No. 263] ("Joinder").

21       11.    Loza in turn filed her *Debtor's Limited Opposition to Motion to Enforce Settlement*

22  *Agreement* [ECF No. 268], and Mr. Millward filed his *Joinder to Debtor's Opposition and*

23  *Administrator's Limited Opposition to Motion to Enforce Settlement Agreement* [ECF No. 269].

24  Finally, Leverty filed *its Reply in Support of Motion to Enforce Settlement Agreement* [ECF No.

25  272] and Allied filed a joinder [ECF No. 273].

26       12.    On September 6, 2023, the Court held a hearing on the Motion to Enforce and took

27  the matter under submission. On September 29, 2023, the Court entered its *Order Regarding*

28  *Motion to Enforce Settlement Agreement* [ECF No. 277], wherein it denied without prejudice the

1  Motion to Enforce primarily on the basis that: (1) enforcement was premature because the

2  settlement had not yet been approved by the courts; (2) the Court would not impose requested

3  settlement terms which were not agreed to on the record; and (3) the Court found the motion did

4  not include a request for approval of the settlement agreement under Fed. R. Bankr. P. 9019 and

5  did not provide the appropriate analysis. The Parties then agreed to attend another settlement

6  conference.

7         13.     The Parties attended the second settlement conference with Judge Zive on October

8  18, 2023, at 9:00 a.m. ("October Settlement Conference"), and reached a verbal agreement to

9  resolve all remaining terms in dispute, which agreement was placed on the record.

10         14.     The agreement memorializes the settlement terms reached at the July Settlement

11  Conference as well as those superseding and additional settlement terms reached at the October

12  Settlement Conference. Thus, the settling Parties have started working on a written Settlement

13  Agreement and Mutual General Release ("Settlement Agreement") describing the terms of their

14  agreed-upon settlement reached at the July Settlement Conference and the October Settlement

15  Conference. Although the written Settlement Agreement has not yet been finalized and signed by

16  the Parties, the Parties agree to the material terms and seek approval of the proposed settlement

17  in substantially the form Settlement Agreement attached hereto as **Exhibit A**, subject to a final

18  version that will be submitted to the Court by the time of the hearing on this Motion.

19         15.     The material terms of the Settlement Agreement[1] are:

20     **A. Bankruptcy Court Approval**

21       The Debtor will file this Motion to approve the Settlement Agreement pursuant to Fed. R.

22  Bankr. P. 9019 by November 8, 2023. The Debtor's Motion shall be served upon and further seek

23  to have the order bind all creditors including certain Athena Entities identified by the Parties, with

24  notice of the Motion and the hearing.

25     **B. Probate Court Approval**

26       After Debtor's filing of this Motion, Michael Millward will file a petition in the Probate

27

28  _____

[1] Unless otherwise noted, any capitalized terms have the same meaning as in the Settlement Agreement.

Case seeking approval of the Settlement Agreement ("Petition to Approve") and request the first available hearing date after the hearing on this Motion. The Petition to Approve shall seek to have the Probate Court retain jurisdiction over the enforcement of the Settlement Agreement and will further seek an order that provides that the approved Settlement Agreement shall bind all interested persons of the Exley Estate as to its terms.

### C. Resolution of the Loza Bankruptcy

Upon the later of the entry of an order by the Bankruptcy Court approving this Motion (the "Bankruptcy Court Order") or the Probate Court's entry of an order approving the Settlement Agreement based upon the Petition to Approve, ("Probate Court Order"), the Settlement Agreement shall fully resolve all matters, claims, motions, objections, hearings, and deadlines pertaining to the Loza Bankruptcy, and the case shall be dismissed, as provided in the following paragraphs, and closed.

**1.    Dismissal of Loza Bankruptcy.**  Within ten (10) days after the later of entry of the Bankruptcy Court Order or Probate Court Order, the Debtor will file her motion for voluntary dismissal under 11 U.S.C. § 1307(b) with the Bankruptcy Court. The Debtor will be prohibited from filing another bankruptcy case under any circumstances until all terms of the Settlement Agreement have been fully performed.

**2.    Resolution of Other Matters in Loza Bankruptcy.**  Upon entry of the Bankruptcy Court Order, all litigation in the Loza Bankruptcy will become moot and dismissed with prejudice.  These matters include, but are not limited to: the Sanctions Motion, the Motion for Reconsideration, the Motion to Alter or Amend, the Motion to Dismiss (without affecting dismissal of the Loza Bankruptcy as required in this Agreement), and the Homestead Exemption.

**3.    Reopening of Loza Bankruptcy.** Nothing in the Settlement Agreement shall prevent a Party from seeking to reopen the Loza Bankruptcy for the purposes of seeking to enforce the terms of the Settlement Agreement.

### D.  Resolution of Kamma Adversary Proceeding

Upon the entry of the Probate Court Order, the Settlement Agreement shall fully resolve all matters, claims, counterclaims, motions, hearings, and deadlines pertaining to the Kamma

Adversary Proceeding. Within ten (10) days after the entry of the Probate Court Order, Kamma will prepare a stipulation to dismiss the Kamma Adversary Proceeding and the alleged claims and counterclaims with prejudice, and the same shall be circulated and executed by the Parties, and thereafter filed with the Bankruptcy Court with a proposed order.

**E. Resolution of Other Matters**

Except as to matters to be resolved in the Probate Case through the Administration of Ray Warren Exley's Estate as to the Debtor, the Settlement Agreement is intended to fully resolve all claims, motions, hearings, and deadlines pertaining to all other cases and matters concerning any of the Parties, including, but not limited to, the following matters ("Other Litigation"):

> *Ray Warren Exley v. Lois M. O'Brien,* Ninth Judicial District Court of the Nevada in Douglas County, Case No. 14-CV-0130;

> *Leverty & Associates Law, Chtd. v. Ray W. Exley,* United States District Court for the District of Nevada, Case No. 3:17-CV-00175;

> *Leverty & Associates Law, Chtd. v. Ray W. Exley,* Unites States Court of Appeals for the Ninth Circuit, Case No. 19-15545;

> *Leverty & Associates Law, Chtd. v. Ray W. Exley, et. al.,* Ninth Judicial District Court of the Nevada in Douglas County, Case No. 19-CV-0299.

> *Leverty & Associates Law, Chtd. v. Juliana Loza Exley, Special Administrator of the Estate of Ray Warren Exley, et al.,* Nevada Supreme Court Case No. 80857.

> *Leverty & Associates Law CHTD., v. Athena Medical Group Defined Contribution Pension Plan and Trust Number Three et. al.*, Ninth Judicial District of Nevada in Douglas County, Case No. 21-CV-00057; and

> *Juliana Mayer Loza v. Leverty & Associates Law CHTD.,* Nevada Supreme Court Case No. 84245.

**F. Payment to Loza Upon Approval**

Leverty shall tender payment in the sum of fifteen thousand dollars ($15,000) to the Debtor, delivered to her counsel, Harris Law Practice, LLC, no later than ten (10) days after the entry of the Probate Court Order.

### G.  Settlement Amount Paid to Kamma

Within ten (10) days after the later of the expiration of the deadline to appeal from the Bankruptcy Court order and the expiration of the deadline to appeal from the Probate Court Order, Leverty shall pay the sum of One Million One Hundred Thousand Dollars ($1,100,000.00) to Kamma ("Kamma Settlement Payment").   The sources of the Kamma Settlement Payment include the funds held by the Court Clerk of the Ninth Judicial District Court in Case No. 2021-CV-00057 and the funds held in Leverty's Trust Account, which funds were received from the sale of the Property on June 23, 2021.  Leverty will pay the remaining balance of the Kamma Settlement Payment to Kamma from other sources.

### 1.  Release of Funds to Kamma by Ninth Judicial District Court

As soon as possible and no later than the date that Leverty executes the Settlement Agreement, Leverty shall file a motion with the Ninth Judicial District Court in Case No. 2021-CV-00057 to have the funds held by the Court Clerk released to Kamma's counsel, Law Offices of Amy N. Tirre, P.C., to be held pending the entry of the Bankruptcy Court Order and the Probate Court Order.  The Parties agree to cooperate with Leverty and Kamma for release of the held funds. The funds shall be applied to the Kamma Settlement Payment.

### H.  Payment of Sale Proceeds of the Property

The Parties agree that the obligations established under the Settlement Agreement to Leverty, the Exley Estate, and Debtor's counsel, are to be satisfied from the proceeds of the Exley Estate's sale of the Property. The Parties agree that all sums to be paid under the Settlement Agreement out of the sale proceeds of the Property will be paid directly to the recipients from escrow at the close of escrow, and funds in excess of the sums to be paid under the Settlement Agreement will be released to the Exley Estate.

A sale of the Property under the Settlement Agreement will be subject to the terms of the Settlement Agreement as well as the Probate Court's jurisdiction, and oversight.  A sale under the Settlement Agreement will be conducted under NRS § 148.220 through § 148.320 including approval of the sale subject to overbid.

### 1.  Delivery of Quitclaim Deed to Property

Within ten (10) days after the entry of the Bankruptcy Court Order, Allied will execute and deliver a recordable Rescission of Trustee's Deed upon Sale and Kamma will execute and deliver a recordable quitclaim deed (the "Quitclaim Deed" and together with the Rescission of Trustee's Deed Upon Sale, the "Deeds") for the Property to Millward as Administrator of the Exley Estate. Millward will hold the Deeds as a custodian and shall not record them until after Kamma receives the Kamma Settlement Payment. The Rescission of Trustee's Deed Upon Sale will be recorded before the Quitclaim Deed. Kamma and Allied do *not* intend the Deeds to convey title to the Property to Millward unless and until the Settlement Agreement is approved by this Court and the Probate Court. The sole purpose of executing and delivering the Deeds to Millward is to facilitate his ability to sell the Property and seek approval of the sale concurrently with the Petition to Approve the Settlement Agreement.

**2.  Kamma's Assignment of Its Property Tax Reimbursement Claim Against the Exley Estate to Leverty**

Kamma has a claim against the Exley Estate for reimbursement of property taxes in the sum of Twelve Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60) based upon Kamma's payment of real property taxes assessed against the Property ("Property Tax Reimbursement Claim"). Kamma will assign the Property Tax Reimbursement Claim to Leverty and the Settlement Agreement shall constitute a written assignment for this purpose.

**3.  Leverty's Liens Encumbering the Property**

All liens currently encumbering the Property in favor of Leverty, i.e., the Deed of Trust and Judgment Lien ("Leverty's Liens"), shall remain valid and shall continue to encumber the Property and secure Leverty's claims until: (a) Leverty's Liens have been assigned to the Debtor as provided in the Settlement Agreement, or (b) Leverty has been paid all amounts required by the Settlement Agreement. None of the Parties may challenge the amount, validity, or priority of the Leverty Liens.

**4.  Debtor's Right to Purchase Leverty's Liens**

Any time prior to the close of escrow or sale at public auction of the Property, the Debtor may exercise her right to tender payment to Leverty in the sum of Four Hundred Ten Thousand

Dollars ($410,000) in exchange for and in consideration of assignment of Leverty's Liens upon the Property, and an additional Twelve Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60), in consideration of the Property Tax Reimbursement Claim, for a total payment of Four Hundred Twenty-Two Thousand, Six Hundred Fifty-Five and 60/100 Dollars ($422,655.60).

Upon tender of Four Hundred Twenty-Two Thousand, Six Hundred Fifty-Five and 60/100 Dollars ($422,655.60) to Leverty by the Debtor, Leverty shall execute an Assignment of Leverty's Deed of Trust which encumbers the Property and also assign and transfer to the Debtor its interest in its Judgment entered in its favor and against Ray Warren Exley on February 25, 2019, by the Honorable Miranda M. Du of the United States District Court for the District of Nevada, Case No. 17-CV-00175.

If the Debtor exercises her right to purchase the assignment of Leverty's Liens as provided under this Section, and after Leverty's $15,000 payment to Debtor pursuant to Section F above, Leverty shall be relieved of its duty to make any other payments to Debtor under the Settlement Agreement.

**5. Sale of Property to Desotas**

Within ten (10) days of the complete execution of the Settlement Agreement by all Parties and Millward's receipt of the Deeds, Millward will prepare and present the prospective buyers (the "Desotas"), who were referred to Millward by Kamma, with a purchase and sale agreement for the sale of the Property in exchange for the sum of One Million Four Hundred Fifty Thousand Dollars ($1,450,000).

The purchase and sale agreement will provide that the Property shall be sold "as is" and without payment of any real estate commissions. The Property shall be sold with the assistance of a title and escrow company agreed upon by Millward and the Desotas..

The purchase and sale agreement will incorporate and be subject to the terms of the Settlement Agreement and provide that the sale is subject to Probate Court approval and overbid. All other terms of the sale not required to effectuate the Settlement Agreement will remain negotiable between Millward and the Desotas.

1  Nothing in the Settlement Agreement will entitle the Desotas to specific performance in

2  regard to the sale of the Property under the Settlement Agreement.

3  **6.  Listing and Sale of the Property**

4  If Milward and the Desotas are unable to enter into a valid and binding purchase and sale

5  agreement for the Property within a certain number of days after approval of the Settlement

6  Agreement by the Probate Court, or the Desotas advise Millward in writing that they no longer

7  desire to proceed with the purchase of the Property, Millward will engage a real estate broker or

8  agent on behalf of the Exley Estate to list the Property for public sale.  Any listing agreement

9  signed and executed by Millward will be subject to the terms of the Settlement Agreement.

10  The Property shall be listed for no less than One Million Five Hundred Dollars

11  ($1,500,000) or greater amount as determined by the Probate Court. Except as otherwise

12  determined by the Probate Court, so long as no offers are pending, the listing price for the sale of

13  the property will be reduced by 5% for each successive six-week period after the Property has

14  been listed for sale.

15  Any purchase and sale agreement for the sale of the Property established will indicate that

16  the sale is subject to Probate Court approval and overbid and subject to the terms of the Settlement

17  Agreement.

18  **7.  Instructions to Escrow**

19  At close of escrow of a sale of the Property to any buyer, the escrow company closing the

20  transaction will be instructed to make disbursements in the following order:

21  a.    Costs of Sale:  Escrow shall pay the costs of sale, including agreed upon

22  title fees, escrow fees, commissions, as well as any amount to which the Exley Estate has

23  agreed to be obligated under the respective purchase and sale agreement.

24  b.    Payment to Leverty for Release of Leverty's Liens: Except under the

25  circumstances that the Debtor has purchased the Leverty's Liens, escrow shall tender

26  payment in the sum of Five Hundred Thirty-Five Thousand Dollars ($535,000) and an

27  additional Twelve Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60) to

28  Leverty for payment of the Property Tax Reimbursement Claim, for a total payment of

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NV 89511
775 786 7600

Five Hundred Forty Seven Thousand, Six Hundred Fifty-Five Dollars and Sixty Cents $547,655.60, from the proceeds of the sale directly to Leverty. Prior to any such payment or tender, Leverty will reasonably cooperate with the escrow company to execute all papers, re-conveyances, releases, satisfactions, or proofs of surrender necessary to convey insurable title to the buyer of the Property.

      c.    Payment to Debtor for Release of Liens: If Debtor has purchased Leverty's Liens as provided for above, escrow shall tender payment in the sum of Five Hundred Thirty-Five Thousand Dollars ($535,000) and an additional Twelve Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60) to Debtor for payment of the Property Tax Reimbursement Claim, for a total payment of Five Hundred Forty Seven Thousand, Six Hundred Fifty-Five Dollars and Sixty Cents $547,655.60, from the proceeds of the sale directly to the Debtor. Prior to any such payment or tender, the Debtor will reasonably cooperate with the escrow company to execute all papers, re-conveyances, releases, satisfactions, or proofs of surrender necessary to convey insurable title to the buyer of the Property.

      d.    Debtor's Attorney's Fees: Escrow shall tender payment of One Hundred Thousand Dollars ($100,000.00) to Harris Law Practice LLC, and Twenty-Three Thousand Dollars ($23,000.00) to the Law Office of Gene M. Kaufmann.

      e.    Proceeds to be Paid to Exley Estate: Escrow shall tender payment of the remaining sale proceeds to Millward to be administered as part of the property of the Exley Estate.

**8. Public Auction of the Property**

Prior to the expiration of the one-year anniversary of the Probate Court's approval of the Settlement Agreement, if the Leverty Liens have not been assigned to Debtor, and no sale of the Property has concluded or is pending, the Property will be noticed for sale by public auction in open court pursuant to NRS § 148.230 and § 148.270(3). The Probate Court shall not approve of a sale of the Property where the bid for the purchase of the Property will be insufficient to provide

1  payment for the obligations to be paid under the Settlement Agreement including the payment of

2  all administrative expenses of the Exley Estate.

3        All funds received by Millward at the conclusion of a Public Auction shall be disbursed

4  in the amounts and in the priority indicated under the "Instructions to Escrow" set forth above. In

5  the instance of a Public Auction, the Probate Estate will not acquire an interest in the proceeds of

6  a sale until all payments required under the "Instructions to Escrow" have been paid.

7        If the Property is not successfully sold pursuant to this Public Auction process, the same

8  process shall repeat until the Property sells.

9        **I.   Payment to Debtor Following Release of Liens and Sale**

10        Except if Debtor has purchased Leverty's Liens as set forth in Section (H)(4) above,

11 Leverty shall tender payment of One Hundred Twenty-Five Thousand Dollars ($125,000) to

12 Debtor as directed by Debtor's counsel within twenty-one (21) days of the close of escrow on the

13 sale of the Property.

14        **J.   Releases, Covenants, and Assurances**

15        The Parties agree to the following releases, covenants, and assurances:

16            **1.        Mutual Release**

17        Except for the obligations created by the Settlement Agreement or as otherwise provided

18 in the Settlement Agreement, each of the Parties, and their parents, subsidiaries, affiliates,

19 members, managers, officers, directors, shareholders, partners, predecessors, successors, assigns,

20 trustees, beneficiaries, heirs, employees, agents, and personal and other representatives, and

21 anything related to any of those parties, forever release and  discharge each and every one of the

22 other Parties to this Agreement, and their parents, subsidiaries, affiliates, members, managers,

23 officers, directors, shareholders, partners, predecessors, successors, alter egos, assigns, trustees,

24 beneficiaries, heirs, employees, agents, personal and other representatives, from any liability for

25 any and all known and unknown claims, counterclaims, controversies, administrative or

26 regulatory claims or complaints, actions, causes of action, demands, debts, damages, costs,

27 attorneys' fees, or liabilities of any nature whatsoever, in law or in equity, comprising any claim

28 under federal, state, or local statute, code, or ordinance or common law that has arisen from the

1   actions described in the Recitals of the Settlement Agreement, including without limitation those
2   claims related to the Property, the Loza Bankruptcy (and all motions and complaints filed therein
3   including the Stay Violation Motion, the Motion for Reconsideration, the Sanctions Order, the
4   Motion to Alter or Amend, the Motion to Dismiss and the Homestead Objection), the Kamma
5   Adversary Proceeding, the Other Litigation and the Exley Estate, which occurred from the
6   beginning of time until the entry of the Bankruptcy Court Order or the Probate Court Order,
7   whichever occurs last.

8          The proposed Settlement Agreement has other standard terms as stated therein. Through
9   this Motion, the Debtor seeks this Court's approval of the Settlement Agreement upon the terms
10  summarized above and as more specifically stated and agreed in substantially the form found in
11  the proposed Settlement Agreement attached hereto.

12                                  **LEGAL ARGUMENT**

13         Federal Rule of Bankruptcy Procedure 9019(a) provides that: "On motion by the trustee
14  after notice and hearing, the court may approve a compromise or settlement. Notice shall be given
15  to creditors, the United States trustee, the debtor, and indenture trustees as provided in
16  [Bankruptcy Rule] 2002 and to any other entity as the court may direct." Fed. R. Bankr. P.
17  9019(a).

18         The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy
19  court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins.*
20  *Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement
21  is to allow the trustee and the creditors to avoid the expenses and burdens associated with
22  litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784
23  F.2d 1377, 1380–81 (9th Cir. 1986), *cert, denied* 479 U.S. 854 (1986). Thus, in approving a
24  settlement agreement, the Court need not conduct an exhaustive investigation of the claims sought
25  to be compromised. *See United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d
26  1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the Court finds that the settlement was
27  negotiated in good faith and is reasonable, fair, and equitable. *See A & C Properties*, 784 F.2d at
28  1381.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NV 89511
775 786 7600

The Ninth Circuit has also identified the factors below for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

      i.      the probability of success in litigation;

      ii.      the difficulties, if any, to be encountered in the matter of collection;

      iii.      the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

      iv.      the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A & C Properties*, 784 F.2d at 1381 ("*A&C* Factors").

The *A&C* analysis does not require the Court to determine whether a settlement presented is the best one that might have been achieved. Rather, the Court need only canvass the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness." *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972); *see also Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Services. Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). Finally, although the Court should give deference to the reasonable views of creditors, "objections do not rule. It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891. (Bankr. S.D. Ohio 1990).

Consideration of the *A&C* Factors favors approval of this Motion, for these reasons:

a.    <u>Probability of Success.</u> The Debtor has already prevailed in her Sanctions Motion, but it is subject to Leverty's Motion for Reconsideration which this Court has taken under advisement. Although the Debtor believes she would ultimately prevail, she would still have to prove up the amount of sanctions against Leverty and Allied. All litigation is uncertain, and the Debtor would have to incur additional attorneys' fees and costs in any proceedings to prove up her sanctions award. The Debtor also believes she has strong defenses and counterclaims for violation of the automatic stay against Kamma in the Kamma Adversary Proceeding, but the case is still in its early

1   pleading stages with no discovery yet conducted. The Debtor will also incur

2   additional legal fees and costs in continuing to defend and prosecute

3   counterclaims in the Kamma Adversary Proceeding.

4   b.    Difficulty of Collection. This factor is neutral because the Debtor believes

5   she would ultimately be successful in collecting any sanctions award against

6   Leverty and Allied, which are both seemingly successful going concern

7   businesses. Likewise, the Debtor believes she could collect any judgment

8   against Kamma on account of her counterclaim.

9   c.    Complexity of the Litigation. Any litigation has inherent risk. The Debtor's

10  Sanctions Motion was filed more than two years ago and still not fully

11  resolved. Any continuing proceeding to determine the amount of sanctions

12  against Leverty and Allied would likely require discovery, take several

13  more months, and potentially end up in appeals. As mentioned above, the

14  Kamma Adversary Case is only in its early pleading stages. Although the

15  stated claims are not particularly complex, they still require significant

16  discovery to prove and/or defend.

17  d.    Interests of Creditors. The proposed compromise and settlement set forth

18  here is in the best interests of the creditors because the Settlement

19  Agreement will finally resolve all claims and disputes involving the Debtor

20  in this bankruptcy case and in several other cases pending in other courts.

21  For all these reasons, the *A&C* Factors weigh heavily toward approval of the Settlement

22  Agreement. Accordingly, the Debtor believes it is in the best interest of the estate and creditors

23  for the Court to approve the Parties' settlement based on the material terms indicated above and

24  substantially in the form stated in the Settlement Agreement.

25  **CONCLUSION**

26  In conclusion, the Debtor respectfully requests that this Court enter its Order approving

27  the proposed compromise and settlement between the Parties on the terms set forth above and in

28  the Settlement Agreement, as supplemented by a final, executed Settlement Agreement to be

1 | presented to this Court before the hearing; and for any other relief that is proper under the

2 | circumstances.

3 |     DATED November 8, 2023.

HARRIS LAW PRACTICE LLC

*/s/ Stephen R. Harris*

_____
STEPHEN R. HARRIS, ESQ.
Attorneys for Debtor/Defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "**Agreement**") is entered into this __ day of November, 2023, by and among Juliana Mayer Loza ("**Loza**"), individually and in her capacities as sole heir to the Estate of Ray Warren Exley, as successor trustee and sole beneficiary of the Ray Warren Exley, M.D., Nevada Family Trust, and on behalf of any entity or trust of which she is a legally authorized representative, or in which she has decision making authority; Leverty & Associates Law Chtd., a Nevada professional corporation, and its officers and attorneys, ("**Leverty**"); Automatic Funds Transfer Services, a Washington Corporation, d.b.a. Allied Trustee Services ("**Allied**") as Trustee of the Deed of Trust recorded with the Douglas County Recorder on June 5, 2017 ("**Deed of Trust**") as document number 2017-899576; Kamma, LLC, a Nevada limited liability company ("**Kamma**"); and Michael G. Millward, Esq., ("**Millward**") in his capacity as the appointed General Administrator of the Estate of Ray Warren Exley ("**Exley Estate**") in Case No. 20-PB-00129 ("**Probate Case**") pending before the Ninth Judicial Court for Douglas County, Nevada ("**Probate Court**").

All the parties hereto are collectively referred to as the "**Parties**," or individually as a "**Party**," wherever applicable.

With the exception of Loza's interest in the Estate of Ray Warren Exley, this Agreement is intended to be a global resolution and settlement of all claims, liabilities, disputes, and matters that exist among the Parties, or which pertain to the real property located at 429 Panorama Drive, Stateline, Nevada 89449 (the "**Property**"), including all other actions and proceedings now

pending brought by any party that may affect any other party and Leverty's liens encumbering property the Property.[1]

## I.    RECITALS

**WHEREAS,** on June 22, 2021, Loza filed her petition for relief under Chapter 13 before the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**") in Case No. 21-50466-NMC (the "**Loza Bankruptcy**").

**WHEREAS,** on June 23, 2021, after being informed of the Loza Bankruptcy, at the request of Leverty as beneficiary of the Deed of Trust, Allied, as Trustee of the Deed of Trust, sold the Property by foreclosure sale.

**WHEREAS**, Kamma was the successful bidder at the foreclosure sale and paid nine hundred seventy-nine thousand dollars ($979,000) for the Property.

**WHEREAS,** on June 24, 2021, Loza filed the *Debtor's Motion for Sanctions Against Leverty & Associates Law, Chtd., and Allied Foreclosure Services for Willful Violation of the §362(a) Automatic Stay and to Declare Sale Void Ab Initio* ("**Sanctions Motion**") seeking an order declaring the foreclosure sale to be void ab initio and also seeking damages against Leverty and Allied for violating the automatic stay.

**WHEREAS,** on July 23, 2021, the Bankruptcy Court entered its *Order Regarding Debtor's Motion for Sanctions Against Leverty & Associates Law, Chtd. and Allied Foreclosure*

---

[1] The agreement is not intended to affect Loza's rights as it pertains to the Exley Estate, including the right to make claims against the Exley Estate or any right to receive a distribution from the Estate.

*Services for Willful Violation of the §362(a) Automatic Stay and to Declare Sale Void Ab Initio* therein denying Loza's Sanctions Motion

**WHEREAS,** Allied conveyed the Property to Kamma via a Trustee's Deed Upon Sale, which was recorded with the Douglas County Recorder's Office on July 30, 2021.

**WHEREAS,** on July 30, 2021, Allied tendered Seven Hundred Fifty-One Thousand, Two Hundred Sixty-Two and 39/100 Dollars ($751,262.39) to the Ninth Judicial District Court Clerk for the State of Nevada, to be held connection with Case No. 2021-CV-00057 pending before that court.

**WHEREAS,** on July 30, 2021, the District Court in Case No. 2021-CV-00057, entered an Order directing the Clerk to disburse Two Hundred One Thousand, Three Hundred Fifty-Eight and 06/100 Dollars ($201,358.06) as satisfaction of a stipulated settlement agreement including interest as agreed to Judgment entered in favor of Leverty in a separate matter before the United States District Court in Case No. 3:17-001750-MMD-VPC.

**WHEREAS,** after the Ninth Judicial District Court Clerk's disbursements of Two Hundred Forty-Six Thousand, Four Hundred Three and 06/100 Dollars ($246,403.06) to Leverty, the sum remaining with the Clerk totaled Five Hundred Four Thousand, Eight Hundred Forty-Nine and 33/100 Dollars ($504,849.33).

**WHEREAS,** on August 26, 2021, Loza filed her *Motion for Reconsideration to Amend Judgment, for New Hearing, or, Alternatively, for Additional Findings, Pursuant to FRBP 9023, 9024, and 7052* (the "**Motion for Reconsideration**") with the Bankruptcy Court in the Loza Bankruptcy.

**WHEREAS,** on April 4, 2023, the Bankruptcy Court entered its *Memorandum Decision After Evidentiary Hearing Regarding the Memorandum Decision and Order Granting Motion to*

3

*Reconsider and Denying Motion to Dismiss concluding that Allied and Leverty violated the automatic stay by conducting the foreclosure sale and the sale of the Property to Kamma and ordering that the foreclosure sale was void ab initio* (the "**Sanctions Order**").

**WHEREAS**, on April 18, 2023, Leverty filed *its Motion to Alter or Amend Judgment or for New Trial Under Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Procedure 59* (the "**Motion to Alter or Amend**").

**WHEREAS,** on April 20, 2023, Kamma filed its Complaint  commencing adversary proceeding no. 23-05007-NMC in the Loza Bankruptcy (the "**Kamma Adversary Proceeding**"), therein naming Leverty; Allied; Loza, Athena Medical Group, Inc., a Nevada corporation ("Athena Nevada"), and The Athena Medical Group, Inc. Defined Contribution Pension Plan and Trust Number Three, as defendants.

**WHEREAS**, on May 1, 2023, Kamma filed its Amended Complaint adding Millward in his capacity as Special Administrator of the Exley Estate.[2]

**WHEREAS,** on June 22, 2023, Leverty filed a *Motion to Dismiss Bankruptcy Case* (the "**Motion to Dismiss**") in the Loza Bankruptcy.

**WHEREAS,** on June 23, 2023, Leverty filed an Objection to Homestead Exemption (the "**Homestead Objection**") in the Loza Bankruptcy.

**WHEREAS**, on July 7, 2023, the Parties participated in a Settlement Conference ("**July Settlement Conference**") before the Honorable Judge Gregg W. Zive and reached a verbal

---

[2] On October 13, 2023, the Probate Court entered an Order appointing Millward as the General Administrator.

settlement agreement resolving any and all the Parties' respective claims against each other including all matters and proceedings then pending.

**WHEREAS**, on August 22, 2023, Leverty filed its *Motion to Enforce Settlement Agreement*, therein seeking to resolve disputed terms of the Parties' drafts of a written settlement agreement.

**WHEREAS**, on September 29, 2023, the Bankruptcy Court entered its *Order Regarding Motion to Enforce Settlement Agreement*, therein declining to resolve the Parties' disputes by imposing additional terms.

**WHEREAS**, the Parties stipulated to meet for a second settlement conference with Judge Zive on October 18, 2023 to resolve the Parties' disputes.

**WHEREAS**, on October 12, 2023, the Court entered its Order Scheduling Settlement and Status Conferences.

**WHEREAS**, on October 18, 2023, the Parties attended the Settlement Conference ("**October Settlement Conference**") and reached a verbal agreement resolving all remaining terms in dispute in Leverty's Motion to Enforce, which agreement was placed on the record.

**WHEREAS**, this Agreement is intended to memorialize the settlement terms reached at the July Settlement Conference as well as those superseding and additional settlement terms reached at the October Settlement Conference.

**WHEREAS**, the Parties acknowledge that they each desire and intend to avoid the cost, expense, and uncertainty associated with continuing litigation in the Loza Bankruptcy including all pending motions, objections, and Kamma's Adversary Proceeding.

**WHEREAS,** with the exception of Loza's interest in the Estate of Ray Warren Exley, each Party acknowledges that they intend to fully and finally forever resolve all of their claims against each other, on the terms and conditions set forth herein.

**NOW, THEREFORE,** based upon the foregoing recitals, the parties enter into the following agreement.

## II.    AGREEMENT

**NOW, THEREFORE,** for good and valuable consideration including the acts, covenants, and mutual agreements herein described and agreed to be performed, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

### A.    Bankruptcy Court Approval

Loza shall file a motion to approve this Agreement with the Bankruptcy Court pursuant to FRBP 9019 ("9019 Motion") by November 8, 2023. Loza's 9019 Motion shall be served upon and further seek to have the Order bind all creditors including the Athena Entities,[3] with notice of the 9019 Motion and the hearing as to its terms.  The Hearing on the 9019 Motion shall be held on November 28, 2023, at 2:00 p.m., all oppositions to the 9019 Motion are due on November __, 2023, and all replies in support of the 9010 Motion are due on November __, 2023.

### B.    Probate Court Approval and Notice to Creditors

No later than three (3) business days of the filing of the 9019 Motion,  Millward shall file a Petition in the Probate Case seeking approval of this Agreement (**"Petition to Approve"**) and request the first available hearing date after the hearing on the 9019 Motion. The Petition to

---

[3] [List all Athena Entities here] (the "**Athena Entities**")

6

Approve shall seek to have the Probate Court retain jurisdiction over the enforcement of this Agreement, and further seek an order that provides that the approved Agreement shall bind all interested persons of the Exley Estate as to its terms.

In connection with the Notice to Creditors to be filed and published in the Probate Case, and for the purpose of providing notice and an opportunity to be heard to all known and unknown interested persons, Millward shall publish notice of the hearing upon Petition to Approve this Agreement. Additionally, Millward shall serve notice of the hearing upon the Petition to Approve this Agreement upon all known creditors of Ray Warren Exley and the Athena Entities.

### C.    Resolution of the Loza Bankruptcy

Upon the later of the entry of an order by the Bankruptcy Court approving the 9019 Motion (the "**Bankruptcy Court Order**") or the Probate Court's entry of an order approving this Agreement based upon the Petition to Approve, ("**Probate Court Order**"), this Agreement shall fully resolve all matters, claims, motions, objections, hearings, and deadlines pertaining to the Loza Bankruptcy, and the case shall be dismissed, as provided in the following paragraph, and closed.

1.    **Dismissal of Loza Bankruptcy**.  Within ten (10) days after the the later of entry of the Bankruptcy Court Order or Probate Court Order, Loza shall file her Motion for Voluntary Dismissal under 11 U.S.C. § 1307(b) of the Loza Bankruptcy with the Bankruptcy Court. Loza agrees that she shall be prohibited from filing another bankruptcy case under any circumstances until all terms of this Agreement have been fully performed.

2.    **Resolution of Other Matters in Loza Bankruptcy.**  Upon entry of the Bankruptcy Court Order, all litigation in the Loza Bankruptcy will become moot and dismissed with prejudice.  These matters include, but are not limited to: the Sanctions

7

Motion, the Motion for Reconsideration, the Motion to Alter or Amend, the Motion to Dismiss (without affecting dismissal of the Loza Bankruptcy as required in this Agreement), and the Homestead Exemption.

**3.**     **Reopening of Loza Bankruptcy.** Nothing in this Agreement shall prevent a Party from seeking to reopen the Loza Bankruptcy for the purposes of seeking to enforce the terms of this Agreement.

**D.**     **Resolution of Kamma Adversary Proceeding**

Upon the entry of the Probate Court Order, this Agreement shall fully resolve all matters, claims, counterclaims, motions, hearings, and deadlines pertaining to the Kamma Adversary Proceeding.  Within ten (10) days after the entry of the Probate Court Order, Kamma shall prepare a stipulation to dismiss the Kamma Adversary Proceeding and the alleged claims and counterclaims with prejudice, and the same shall be circulated and executed by the Parties, and thereafter filed with the Bankruptcy Court with a proposed order.

**E.**     **Resolution of Other Matters**

Except as to matters to be resolved in the Probate Case through the Administration of Ray Warren Exley's Estate as to Loza, this Agreement is intended to fully resolve all claims, motions, hearings, and deadlines pertaining to all other cases and matters concerning any of the Parties, including, but not limited to, the following matters ("Other Litigation"):

1.     *Ray Warren Exley v. Lois M. O'Brien,* Ninth Judicial District Court of the Nevada in Douglas County, Case No. 14-CV-0130;

2.     *Leverty & Associates Law, Chtd. v. Ray W. Exley,* United States District Court for the District of Nevada, Case No. 3:17-CV-00175;

3.    *Leverty & Associates Law, Chtd. v. Ray W. Exley,* Unites States Court of Appeals for the Ninth Circuit, Case No. 19-15545;

4.    *Leverty & Associates Law, Chtd. v. Ray W. Exley, et. al.,* Ninth Judicial District Court of the Nevada in Douglas County, Case No. 19-CV-0299.

5.    *Leverty & Associates Law, Chtd. v. Juliana Loza Exley, Special Administrator of the Estate of Ray Warren Exley, et al.,* Nevada Supreme Court Case No. 80857.

6.    *Leverty & Associates Law CHTD., v. Athena Medical Group Defined Contribution Pension Plan and Trust Number Three et. al.,* Ninth Judicial District of Nevada in Douglas County, Case No. 21-CV-00057; and

7.    *Juliana Mayer Loza v. Leverty & Associates Law CHTD.,* Nevada Supreme Court Case No. 84245.

## F.    Payment to Loza Upon Approval

Leverty shall tender payment in the sum of fifteen thousand dollars ($15,000) to Loza, delivered to Loza's counsel, Harris Law Practice, LLC, no later than ten (10) days after the entry of the Probate Court Order.

## G.    Settlement Amount Paid to Kamma

Within ten (10) days after the later of the expiration of the deadline to appeal from the Bankruptcy Court order and the expiration of the deadline to appeal from the Probate Court Order, Leverty shall pay the sum of One Million One Hundred Thousand Dollars ($1,100,000.00) to Kamma ("**Kamma Settlement Payment**"). The sources of the Kamma Settlement Payment include the funds held by the Court Clerk of the Ninth Judicial District Court in Case No. 2021-CV-00057 and the funds held in Leverty's Trust Account, which funds were received from the

9

sale of the Property on June 23, 2021.  Leverty shall pay the remaining balance of the Kamma

Settlement Payment to Kamma from other sources.

      **1.**        **Release of Funds to Kamma by Ninth Judicial District Court**

As soon as possible and no later than the date that Leverty executes this Agreement,

Leverty shall file a motion with the Ninth Judicial District Court in Case No. 2021-CV-00057 to

have the funds held by the Court Clerk released to Kamma's counsel, Law Offices of Amy N.

Tirre, P.C., to be held pending the entry of the Bankruptcy Court Order and the Probate Court

Order.  The Parties agree to cooperate with Leverty and Kamma for release of the held funds. The

funds shall be applied to the Kamma Settlement Payment.

      **H.**        **Payment of Sale Proceeds of the Property**

The Parties agree that the obligations established under this Agreement to Leverty, the

Exley Estate, and Loza's counsel, are to be satisfied from the proceeds of the Exley Estate's sale

of the Property. The Parties agree that all sums to be paid under this Agreement out of the sale

proceeds of the Property shall be paid directly to the recipients from escrow at the close of escrow,

and funds in excess of the sums to be paid under this Agreement shall be released to the Exley

Estate.

A sale of the Property under this Agreement shall be subject to the terms of this Agreement

as well as the Probate Court's jurisdiction, and oversight.  A sale under this Agreement shall be

conducted under NRS § 148.220 through § 148.320 including approval of the sale subject to

overbid.

      **1.**        **Delivery of Quitclaim Deed to Property**

Within ten (10) days after the entry of the Bankruptcy Court Order, Allied shall execute

and deliver a recordable Rescission of Trustee's Deed upon Sale and Kamma shall execute and

deliver a recordable quitclaim deed (the "Quitclaim Deed" and together with the Rescission of Trustee's Deed Upon Sale, the "Deeds") for the Property to Millward as Administrator of the Exley Estate.. Millward shall hold the Deeds as a custodian and shall not record them until after the Kamma receives the Kamma Settlement Payment. The Rescission of Trustee's Deed Upon Sale be recorded before the Quitclaim Deed.  Kamma and Allied do *not* intend the Deeds to convey title to the Property to Millward unless and until this Agreement is approved by the Bankruptcy Court and the Probate Court.  The sole purpose of executing and delivering the Deeds to Millward is to facilitate his ability to sell the Property and seek approval of the sale concurrently with the Petition to Approve this Agreement.

### 2.    Kamma's Assignment of Its Property Tax Reimbursement Claim Against the Exley Estate to Leverty

Kamma has a claim against the Exley Estate for reimbursement of property taxes in the sum of Twelve Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60) based upon Kamma's payment of real property taxes assessed against the Property ("**Property Tax Reimbursement Claim**"). Kamma hereby assigns the Property Tax Reimbursement Claim to Leverty and this Agreement shall constitute a written assignment for this purpose.

### 3.    Leverty's Liens Encumbering the Property

All liens currently encumbering the Property in favor of Leverty, i.e., the Deed of Trust and Judgment Lien ("**Leverty's Liens**"), shall remain valid and shall continue to encumber the Property and secure Leverty's claims until: (a) Leverty's Liens have been assigned to Loza as provided in this Agreement, or (b) Leverty has been paid all amounts required by this Agreement. None of the Parties to this agreement may challenge the amount, validity or priority of the Leverty Liens.

11

### 4.    Loza's Right to Purchase Leverty's Liens

Any time prior to the close of escrow or sale at public auction of the Property, Loza may exercise her right to tender payment to Leverty in the sum of Four Hundred Ten Thousand Dollars ($410,000) in exchange for and in consideration of assignment of Leverty's Liens upon the Property, and an additional Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60), in consideration of the Property Tax Reimbursement Claim, for a total payment of Four Hundred Twenty-Two Thousand, Six Hundred Fifty-Five and 60/100 Dollars ($422,655.60).

Upon tender of Four Hundred Twenty-Two Thousand, Six Hundred Fifty-Five and 60/100 Dollars ($422,665.60) to Leverty by Loza, Leverty shall execute an Assignment of Leverty's Deed of Trust which encumbers the Property andalso assign and transfer to Loza its interest in its Judgment entered in its favor and against Ray Warren Exley on February 25, 2019, by the Honorable Miranda M. Du of the United States District Court for the District of Nevada, Case No. 17-CV-00175.

If Loza exercises her right to purchase the assignment of Leverty's Liens as provided under this Section, and after Leverty's $15,000 payment to Loza pursuant to Section F above, Leverty shall be relieved of its duty to make any other payments to Loza under this Agreement.

### 5.    Sale of Property to Desotas

Within ten (10) days of the complete execution of this Agreement by all Parties and Millward's receipt of the Deeds, Millward shall prepare and present the prospective buyers (the "**Desotas**"), who were referred to Millward by Kamma, with a purchase and sale agreement for the sale of the Property in exchange for the sum of One Million Four Hundred Fifty Thousand Dollars ($1,450,000).

12

The purchase and sale agreement shall provide that the Property shall be sold "as is" and without payment of any real estate commissions. The Property shall be sold with the assistance of a title and escrow company agreed upon by Millward and the Desotas..

The purchase and sale agreement shall incorporate and be subject to the terms of this Agreement and provide that the sale is subject to Probate Court approval and overbid. All other terms of the sale not required to effectuate this Agreement shall remain negotiable between Millward and the Desotas.

Nothing in this Agreement shall entitle the Desotas to specific performance in regard to the sale of the Property under this Agreement.

### 6.    Listing and Sale of the Property

If Milward and the Desotas are unable to enter into a valid and binding purchase and sale agreement for the Property within _____ days of approval of this Agreement by the Probate Court or the Desotas advise Millward in writing that they no longer desire to proceed with the purchase of the Property, Millward shall engage a real estate broker or agent on behalf of the Exley Estate to list the Property for public sale.  Any listing agreement signed and executed by Millward shall be subject to the terms of this Agreement.

The Property shall be listed for no less than One Million Five Hundred Dollars ($1,500,000) or greater amount as determined by the Probate Court. Except as otherwise determined by the Probate Court, so long as no offers are pending, the listing price for the sale of the property shall be reduced by 5% for each successive six-week period after the Property has been listed for sale.

13

Any purchase and sale agreement for the sale of the Property established shall indicate that the sale is subject to Probate Court approval and overbid and subject to the terms of this Agreement.

### 7.    Instructions to Escrow

At close of escrow of a sale of the Property to any buyer, the escrow company closing the transaction shall be instructed to make disbursements in the following order:

a.    Costs of Sale:  Escrow shall pay the costs of sale, including agreed upon title fees, escrow fees, commissions, as well as any amount to which the Exley Estate has agreed to be obligated under the respective purchase and sale agreement.

b.    Payment to Leverty for Release of Leverty's Liens: Except under the circumstances that Loza has purchased the Leverty's Liens, escrow shall tender payment in the sum of Five Hundred Thirty-Five Thousand Dollars ($535,000) and an additional Twelve Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60) to Leverty for payment of the Property Tax Reimbursement Claim, for a total payment of Five Hundred Forty Seven Thousand, Six Hundred Fifty-Five Dollars and Sixty Cents $547,655.60, from the proceeds of the sale directly to Leverty.  Prior to any such payment or tender, Leverty shall reasonably cooperate with the escrow company to execute all papers, re-conveyances, releases, satisfactions, or proofs of surrender necessary to convey insurable title to the buyer of the Property.

c.    Payment to Loza for Release of Liens: If Loza has purchased Leverty's Liens as provided for above, escrow shall tender payment in the sum of Five Hundred Thirty-Five Thousand Dollars ($535,000) and an additional Twelve Thousand Six Hundred Fifty-Five and 60/100 Dollars ($12,655.60) to Loza for payment of the Property Tax Reimbursement Claim, for a total payment of Five Hundred Forty Seven Thousand, Six Hundred Fifty-Five Dollars

14

and Sixty Cents $547,655.60, from the proceeds of the sale directly to Loza. Prior to any such payment or tender, Loza shall reasonably cooperate with the escrow company to execute all papers, re-conveyances, releases, satisfactions, or proofs of surrender necessary to convey insurable title to the buyer of the Property.

d.      Loza's Attorney's Fees: Escrow shall tender payment of One Hundred Thousand Dollars ($100,000.00) to Harris Law Practice LLC, and Twenty-Three Thousand Dollars ($23,000.00) to the Law Office of Gene M. Kaufmann.

e.      Proceeds to be Paid to Exley Estate: Escrow shall tender payment of the remaining sale proceeds to Millward to be administered as part of the property of the Exley Estate.

### 8.      Public Auction of the Property

Prior to the expiration of the one-year anniversary of the Probate Court's approval of this Agreement, if the Leverty Liens have not been assigned to Loza as permitted herein, and no sale of the Property has concluded or is pending, the Property shall be noticed for sale by public auction in open court pursuant to NRS § 148.230 and § 148.270(3). The Probate Court shall not approve of a sale of the Property where the bid for the purchase of the Property will be insufficient to provide payment for the obligations to be paid under this Agreement including the payment of all administrative expenses of the Exley Estate.

All funds received by Millward at the conclusion of a Public Auction shall be disbursed in the amounts and in the priority indicated under the "Instructions to Escrow" set forth above. In the instance of a Public Auction, the Estate shall not acquire an interest in the proceeds of a sale until all payments required under the "Instructions to Escrow" have been paid.

15

If the Property is not successfully sold pursuant to this Public Auction process, the same process shall repeat until the Property sells.

**I.      Payment to Loza Following Release of Liens and Sale**

Except if Loza has purchased Leverty's Liens as set forth in Section (H)(4) above, Leverty shall tender payment of One Hundred Twenty-Five Thousand Dollars ($125,000) to Loza as directed by Loza's counsel within twenty-one (21) days of the close of escrow on the sale of the Property.

**J.      Releases, Covenants, and Assurances**

The Parties agree to the following releases, covenants, and assurances:

**1.      Mutual Release**

Except for the obligations created by this Agreement or as otherwise provided in this Agreement, each of the Parties, and their parents, subsidiaries, affiliates, members, managers, officers, directors, shareholders, partners, predecessors, successors, assigns, trustees, beneficiaries, heirs, employees, agents, and personal and other representatives, and anything related to any of those parties, forever release and  discharge each and every one of the other Parties to this Agreement, and their parents, subsidiaries, affiliates, members, managers, officers, directors, shareholders, partners, predecessors, successors, alter egos, assigns, trustees, beneficiaries, heirs, employees, agents, personal and other representatives, from any liability for any and all known and unknown claims, counterclaims, controversies, administrative or regulatory claims or complaints, actions, causes of action, demands, debts, damages, costs, attorneys' fees, or liabilities of any nature whatsoever, in law or in equity, comprising any claim under federal, state, or local statute, code, or ordinance or common law that has arisen from the actions described in the Recitals of this Agreement, including without limitation those claims related to the Property, the Loza

Bankruptcy (and all motions and complaints filed therein including the Stay Violation Motion, the Motion for Reconsideration, the Sanctions Order, the Motion to Alter or Amend, the Motion to Dismiss and the Homestead Objection), the Kamma Adversary Proceeding, the Other Litigation and the Exley Estate, which occurred from the beginning of time until the entry of the Bankruptcy Court Order or the Probate Court Order, whichever occurs last..

**2.    Covenant Not to Sue or Initiate Proceedings**

Each of the Parties represents and warrants to all parties to this Agreement that it is not aware of any person or entity who has or may have claims against Loza, Leverty, Allied, and Kamma related to or arising from any of the claims released in this Agreement. Each of the Parties covenant and agree not to directly or indirectly sue or initiate any civil proceeding, criminal proceeding, or regulatory proceeding against any other Party to this Agreement with respect to the claims released in this Agreement. This Release Provision may be pleaded as a full and complete defense and may be used as the basis for an injunction against any action, suit, or other proceeding, which may be instituted, prosecuted, or attempted in breach of the release contained herein.

**3.    Covenant Not to Ridicule, Disparage, or Vilify**

Each of the  Parties agree not to publicly criticize, disparage, ridicule, or vilify any other Party to this Agreement including related entities, associates, agents, representatives, affiliates, and counsel of each Party in any manner whatsoever.

Each Party further warrants that they shall not post or otherwise communicate disparaging comments on the internet including on social media, blogs, chat rooms, internet websites, or any other publicly accessible communication forum.

The Parties further warrant that they shall limit their responses concerning any non-party's inquiry as to the resolution of the Parties' claims and disputes to simply indicate that "all issues between the Parties have been amicably resolved" and make no further comment or statement.

4.      **Representations Related to Release**

Each Party acknowledges, warrants, and represents that:

a.      They are the sole owners of the claims released in this Agreement, and they have not heretofore conveyed or assigned any interest in any such claims to any other person or entity.

b.      They: (a) have read, considered, and understand the effect and consequences of this release provision; (b) have had the assistance of independent counsel of their own choice in negotiating, drafting, reviewing, discussing, and considering all the terms of this release provision; and (c) before executing this Agreement, have had an adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this release provision.

c.      They are not acting in reliance on any representation, understanding, or agreement not expressly set forth herein.

d.      They have executed this Agreement and this release provision as their free and voluntary act, without any duress, coercion, or undue influence exerted by or on behalf of any person.

5.      **Release and Waiver of Unknown Claims**

To the fullest extent permitted by applicable law, the Parties waive the terms and provisions of any statute, rule, or doctrine of common law, that either: (i) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related

to such acts, omissions, matters, causes or things; or (ii) restricts or prohibits the releasing of such claims, whether known or unknown.

6.     **Further Assurances with Respect to Released Claims**

Each of the Parties shall take whatever additional action and execute whatever additional documents (including any assignments of rights) that may be necessary or advisable in order to carry out or effectuate one or more of the provisions of this Agreement.

7.     **Full Compromise and No Admission of Liability**

It is understood that, except as otherwise provided herein, including the obligations created by this Agreement, this Agreement shall constitute a full compromise and settlement of the Parties' claims against each other. This Agreement shall not be construed as an admission of liability or an existence of a defense by any of the Parties.

8.     **Warranty of No Assignment of Claims**

Each Party represents and warrants that they have not assigned or transferred, or attempted to assign or transfer, to any person, corporation, partnership, individual or any entity whatsoever any of their interest in the matters resolved by this Agreement.

9.     **Assurance of Independence**

This Agreement is entered into by all Parties without reliance of any Party's written or verbal assurances as to the consequences of this Agreement. Each Party acknowledges that the decision to enter into this Agreement was their own decision and was independently made without reliance upon the unverified representations of any Party. Each Party acknowledges and represents that they have not been induced by any person to enter into this Agreement by way of any promise, insinuation, or representation extrinsic of the terms of this Agreement.

Each Party acknowledges and represents that they have not relied upon any Party's statements, comments, or representations that could be interpreted to be accounting, tax, or legal advice in choosing to enter into this Agreement.

Each Party represents and warrants they have had the full and complete opportunity to: (a) investigate their rights, obligations under this Agreement; (b) investigate the financial and tax consequences associated with this Agreement; (c) investigate the risks associated with the anticipated actions of third-parties to the Agreement; (d) obtain such business, legal, tax and other advice they deem appropriate in connection with this Agreement; and (e) engage and/or otherwise obtain the advice of such attorneys, tax advisors, accountants and other business advisors as they deem appropriate to advise them of their rights, obligations, and tax consequences associated with this Agreement.

### 10.    Further Assurances

After the date hereof, each of the Parties shall cooperate with the other Parties to this Agreement and shall take such actions as may be reasonably requested (and which actions are consistent with the provisions of this Agreement) to obtain for the requesting Party the benefit of the transaction contemplated hereby which include, without limitation, executing documents that effectuate the terms of this Agreement.

### 11.    Construction

The Parties hereto acknowledge that they have been represented by counsel in negotiations leading to the execution of this Agreement. It is understood and agreed by all the Parties that this Agreement shall be construed without regard to any presumption or other rule requiring construction against any Party causing the Agreement to be drafted.

### K.    Enforcement, Limitations and Disclosures

20

1.      **Time is of the Essence**

Time is of the essence for all obligations set forth in this Agreement.

2.      **Jurisdiction and Enforcement**

The Probate Court shall retain jurisdiction over this Agreement until all terms of this Agreement have been found by the Probate Court to have been fully performed.  The Parties agree that any dispute under this Agreement shall be heard by the Probate Court and shall be governed by and determined in accordance with the laws of the State of Nevada.

The Parties consent to the Probate Court's exercise of personal jurisdiction over each Party for the purposes of resolving all disputes that may arise under this Agreement. Any action taken to enforce any term of this Agreement shall be brought before the Probate Court.

In the event that the Probate Court determines that it is unable to enforce any term of this Agreement or otherwise resolve any dispute of the Parties as a result of this Agreement originating before the Bankruptcy Court, the Parties agree that such a determination shall be sufficient cause to the reopen the Loza Bankruptcy pursuant to 11 U.S.C. § 350(b).

3.      **Breach, Cure, and Default**

No Party to this Agreement shall be found to be in default for breach of that Party's obligations under this Agreement unless another Party has provided written notice of default to that Party of that Party's alleged breaches of its obligations constituting the default and providing ten (10) business days after service of the notice of default to cure.

4.      **Modification and Waiver**

The terms of this Agreement may only be altered or modified by way of a written instrument executed by each of the Parties. The failure of any Party at any time to require performance of any provisions hereof will, in no manner, affect the right at a later date to enforce

21

the same. However, duties, obligations, and the right to receive performance under this Agreement not applicable to all Parties may, by written Agreement, be waived between those respective Parties. However, no waiver by any Party of any condition, or breach by any Party of any provision, term, covenant, representation, or warranty contained in this Agreement, whether by conduct or otherwise, in any one or more instances, will be deemed to be, or construed as, a further or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation, or warranty of this Agreement.

L.    **Notices**

Any and all notices that may be required under this Agreement must be in writing and shall be sent via regular mail to the Parties and to counsel via regular mail and/or email at the following addresses:

Juliana Mayer Loza
c/o Kaufmann Law
1591 Mono Avenue, Suite 102
Minden, NV 89423
Email:
julianaloza@julianaloza.com

With copies to:

Stephen R. Harris, Esq.
Harris Law Practice LLC
850 East Patriot Blvd., Suite F
Reno, NV 89511
Email: steve@harrislawreno.com

Gene M. Kaufmann, Esq.
Law Office of Gene M. Kaufmann
1591 Mono Ave, Suite 102
Minden, NV 89423
Email: gkaufmann@bayith.net

Michael G. Millward, Esq.
Millward Law, Ltd.
1591 Mono Ave, Suite 101
Minden, NV 89423
Email:
michael@millwardlaw.com

22

Kamma, LLC
Brett Nelson
880 Northwood Blvd. #2
Incline Village, NV 89451
Email:
bnelson@elevateig.com

With copies to:

Amy N. Tirre, Esq.
Law Offices of Amy N. Tirre, APC
3715 Lakeside Drive
Reno, NV 89509
Email: amy@amytirrelaw.com


J. Michael Walsh, Esq.
4790 Caughlin Parkway, Suite 602
Reno, NV 89519
Email: jmwalsh@wbrl.net

---

Automatic Funds Transfer Services, a
Washington Corporation dba Allied
Trustee Services
_____
_____

With copies to:

William Ginn, Esq.
Leverty and Associates Law, Chtd.
832 Willow Street
Reno, NV 89502
Email: bill@levertylaw.com


Leverty and Associates Law,
Chtd.
Attn: Patrick Leverty, Esq.
832 Willow Street
Reno, NV 89502
Email: pat@levertylaw.com

With copies to:

Bob L. Olson, Esq.
Snell & Wilmer L.L.P.
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, NV 89169
Email: bolson@swlaw.com


William Ginn, Esq.
Leverty and Associates Law, Chtd.
832 William Street
Reno, NV 89502
Email: bill@levertylaw.com

---

Each Party shall give the other prompt notice of any change of notice designee or address. Notices shall be effective and be deemed to have been received upon sending the notice by email, or three business days after being deposited in the United States Postal Service, first class mail, postage prepaid, whichever occurs first.

### M.    Additional Fees and Costs

Except as otherwise stated in this Agreement, the expenses and fees incurred arising from the Property, the Loza Bankruptcy, the Kamma Adversary Proceeding, the Exley Probate, and other disputes of the Parties shall be borne exclusively by the Party incurring such expenses and fees. However, all costs borne by Millward concerning the Loza Bankruptcy, Kamma's Adversary Proceeding, and the resolution of the same shall be extraordinary expenses of the Exley Estate and shall, to the extent authorized by the Probate Court, be compensated out of the proceeds of the sale of the Property after all other disbursements provided under this Agreement have been tendered and performance under his Agreement is complete.

### N.    Titles and Headings

The paragraph headings appearing in this Agreement have been inserted for the purpose of convenience and ready reference. They do not purport to, and shall not be deemed to, define, limit, or extend the scope or intent of the paragraphs to which they relate.

### O.    Counterparts

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same instrument.  Delivery of an executed counterpart of this Agreement by PDF or facsimile shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any Party delivering an executed counterpart of this Agreement by

PDF or facsimile shall also deliver an original executed counterpart of this Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

### III.    ACKNOWLEDGMENTS

THE SIGNATURES BELOW ESTABLISH THAT EACH PARTY ACKNOWLEDGES AND AGREES:

1.    THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING PROVISIONS AND THAT SUCH PROVISIONS ARE REASONABLE AND ENFORCEABLE.

2.    THAT EACH PARTY HAS AUTHORITY TO ENTER INTO THIS AGREEMENT AND HAS SIGNED THIS AGREEMENT AS THE PARRTY'S OWN FREE AND VOLUNTARY ACT.

3.    THAT EACH PARTY HAS AGREED TO COOPERATE AND DO NOTHING TO HAMPER THE PERFORMANCE OF THIS AGREEMENT.

4.    THAT EACH PARTY HAS AGREED TO BE BOUND UNDER THE TERMS OF THIS AGREEMENT AND THAT THIS AGREEMENT SHALL CONSTITUTE A TOTAL AND ABSOLUTE RESOLUTION OF ALL MATTERS BETWEEN THE PARTIES AND THE SAME SHALL BE BINDING AS TO ALL AGENTS, ASSOCIATES, AFFILIATES, ASSOCIATIONS, CORPORATIONS, PARTNERSHIPS, LIMITED LIABILITY COMPANIES, ALTER EGOS, TRUSTS, AND OTHER ENTITIES OF WHICH ANY PARTY HAS ANY BENEFICIAL INTEREST, OWNERSHIP, OR CONTROL.

5.      THAT THIS IS AN IMPORTANT AND BINDING LEGAL CONTRACT, AND THAT EACH PARTY HAS HAD AN OPPORTUNITY TO REVIEW THIS AGREEMENT WITH LEGAL COUNSEL.

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed as of the day and year first noted above.

LEVERTY & ASSOCIATES LAW CHTD., a Nevada professional corporation

_____        _____
Juliana Mayer Loza, individually, as heir of    By:
Ray Warren Exley, and, to the extent she is    Its:
legally able, on behalf of any entity or trust
of which she is a beneficiary, holds an
ownership interest or control, or in which
she is an authorized representative.

Estate of Ray Warren Exley            Automatic Funds Transfer Services, a
                                      Washington Corporation d.b.a. Allied Trustee
                                      Services

_____        _____
By: Michael G. Millward, Esq.            By:
as General Administrator               Its:

Ray Warren Exley, M.D., Nevada Family    KAMMA, LLC, a Nevada limited liability
Trust                                  company

_____        _____
By: Juliana Mayer Loza, as Trustee and    By:
Beneficiary                            Its:

APPROVED AS TO FORM AND CONTENT

| | |
|---|---|
| SNELL & WILMER L.L.P. | HARRIS LAW PRACTICE LLC |
| By: Bob L. Olson, Esq.<br>3883 Howard Hughes Parkway, Suite 1100<br>Las Vegas, Nevada 89169<br>Email: bolson@swlaw.com<br>Attorneys for Leverty & Associates Law Chtd.<br><br>LAW OFFICES OF AMY N. TIRRE, APC | By: Stephen R. Harris, Esq.<br>850 East Patriot Blvd., Suite F<br>Reno, NV 89511<br>Email: steve@harrislawreno.com<br>Attorneys for Loza<br><br>MILLWARD LAW, LTD. |
| By: Amy N. Tirre, Esq.<br>3715 Lakeside Drive<br>Reno, NV 89509<br>Email: amy@amytirrelaw.com<br>Attorneys for Kamma, LLC | By: Michael G. Millward, Esq.<br>1591 Mono Avenue<br>Minden, NV 89423<br>Email: michael@millwardlaw.com<br>General Administrator of the Estate<br>of Ray Warren Exley |
| By: James M. Walsh, Esq.<br>4790 Caughlin Parkway, Suite 602<br>Reno, NV 89519<br>Attorneys for Kamma, LLC<br><br>LEVERTY AND ASSOCIATES LAW, CHTD. | LAW OFFICE OF GENE M. KAUFMANN |
| By: William Ginn, Esq.<br>832 Willow Street<br>Reno, NV 89502<br>Email: bill@levertylaw.com<br>Attorneys for Automatic Funds Transfer Services, a Washington Corporation dba Allied Trustee Services and Leverty | By: Gene M. Kaufmann, Esq.<br>1591 Mono Avenue, Suite 102<br>Minden, NV 89423<br>Email: gkaufmann@bayith.net<br>Attorneys for Loza Parties |